66 F.3d 940
 103 Ed. Law Rep. 660, 42 Fed. R. Evid. Serv. 1196,
12 A.D.D. 717
 Joel L. GIER, By and Through His Parents and Next Friends;
Jack L. GIER; Mary E. Gier; Amanda Petska, By and Through
Her Parents and Next Friends; Roger D. Petska; Kathleen R.
Petska; Lisa L. Kummer, By and Through Her Parent and Next
Friend; Theresa M. Kummer; Heather A. Duncan, By and
Through Her Parents and Next Friends; James P.L.
Duncan; Kathryn J. Duncan; Thomas W. Lute, By and Through
His Parents and Next Friends; Lewis O. Lute; Carol V.
Lute; Kelly V. Christianson, By and Through Her Parent and
Next Friend; Virginia L. Christianson; Harold Lutkehus,
II, By and Through His Parent and Next Friend; Connie K.
Lutkehus, Appellants,
v.
EDUCATIONAL SERVICE UNIT NO. 16; Marge Lehman; Marge
Veatty, Appellees.
Department of Social Services, State of Nebraska, Interested Party.
 No. 94-3497.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 17, 1995.
Decided Sept. 28, 1995.
 
 Dana C. Bradford, III, Omaha, NE, argued (James R. Welsh, on the brief), for appellant.
 William Thomas Wright, Kearney, NE and Brian David Nolan, Omaha, NE, argued, for appellee.
 Before BOWMAN, MAGILL, and LOKEN, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 Appellants, who are the plaintiffs in this case, seek reversal of the order of the District Court[1] granting summary judgment in favor of the defendants, Educational Service Unit No. 16 (ESU), a political subdivision of the State of Nebraska that provides educational services to handicapped individuals, and Marge Beatty and Marge Lehman, supervisors of ESU. For the reasons set forth below, we affirm the judgment of the District Court.
 
 I.
 
 2
 Appellants are minors who are all mentally and physically handicapped. They attended ESU at various times from 1973 through 1988. During late 1987 and early 1988, the parents of appellants Joel L. Gier, Lisa L. Kummer, Kelly Christiansen, and Harold Lutkehus II took their children to the Boys Town Institute for Abused Handicapped Children where, after conducting psychological testing and evaluation, two of appellants' experts, Drs. Sullivan and Scanlan, determined that these appellants had been emotionally, physically, or sexually abused while attending ESU. A similar determination was subsequently made with respect to appellants Heather Duncan, Thomas Lute, and Amanda Petska by appellants' third expert witness, Dr. Jones, a psychologist in Colorado who purportedly used the same methodology employed by Drs. Sullivan and Scanlan.
 
 
 3
 Appellants then filed this action seeking general monetary damages under 20 U.S.C. Secs. 1400-75 (Supp. V 1993) (Individuals with Disabilities in Education Act) (IDEA) and 42 U.S.C. Sec. 1983 (1988). In addition, appellants brought state law claims under the Nebraska Political Subdivision Tort Claims Act, Neb.Rev.Stat. Secs. 13-901 to 13-926 (1991 & Supp.1994), invoking the District Court's pendent jurisdiction. The District Court entered an order for partial summary judgment against appellants, (1) holding that claims that appellants' parents had assigned to their children were barred by the statute of limitations; (2) excluding evidence regarding the sexual habits, proclivities and relationships of a teacher at ESU; and (3) ruling that appellants' IDEA claims were barred because appellants failed to exhaust their administrative remedies.
 
 
 4
 Following an evidentiary hearing, the District Court also entered a separate order in limine precluding the admission of much of the testimony of Drs. Sullivan, Scanlan and Jones on grounds that their methodology lacked sufficient indicia of reliability under Daubert v. Merrell Dow Pharmaceuticals, Inc., --- U.S. ----, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Gier v. Educational Service Unit No. 16, 845 F.Supp. 1342, 1351-53 (D.Neb.1994). The parties then filed a joint stipulation which stated in relevant part:
 
 
 5
 2. The sole basis for the allegations as set forth in the plaintiffs' Second Amended Complaint ... are the opinions of [plaintiffs' experts] John Scanlon, M.D., Patricia Sullivan, Ph.D. and Marilyn Jones, Ph.D. as identified in the Motions in Limine filed by the defendants in this case on January 7, 1994, Filings nos 282 and 285, and as excluded by this Court's order of February 2, 1994, Filing [302; 309].
 
 
 6
 3. That in the absence of these opinions, the plaintiffs cannot meet essential elements of their burden of proof against any defendant:
 
 
 7
 a. That during the attendance of the plaintiff children ... at a school operated by ESU and defendants Marge Lehman and Marge Beatty in North Platte, Nebraska for the trainable mentally retarded, they were physically, sexually and emotionally abused.
 
 
 8
 b. That any physical, sexual, or emotional abuse was the result of either the deliberate indifference of the defendants to a known risk of harm to the children or negligence.
 
 
 9
 Filing 328 at 2, quoted in Gier v. Educational Service Unit No. 16, No. 7:CV92-5000, Mem. & Order at 4 (D.Neb. Sept. 12, 1994). On the basis of appellants' concession in the stipulation that they were unable to meet their burden of proof absent the expert opinion testimony excluded by the Court's motion in limine, the District Court granted summary judgment in favor of ESU. This appeal then was timely filed.
 
 
 10
 We review a district court's evidentiary decisions for clear abuse of discretion, Adams v. Fuqua Industries, Inc., 820 F.2d 271, 273 (8th Cir.1987), and its grant of summary judgment de novo, Maitland v. University of Minnesota, 43 F.3d 357, 360 (8th Cir.1994).
 
 II.
 
 11
 The appellants' principal argument on appeal is that the District Court erred in precluding testimony of appellants' expert witnesses. Specifically, the District Court ordered appellants' experts not to testify "to any conclusion that any plaintiff was abused in any way," "to any opinion based on such a conclusion," or "to any opinion that plaintiffs' behavior is consistent with abuse of any kind." See Gier, 845 F.Supp. at 1354.
 
 
 12
 The basis for the District Court's order was an analysis of the appellants' proffered testimony under the criteria set forth by the Supreme Court in Daubert. Prior to Daubert, scientific evidence was admissible only if the scientific principles underlying the evidence were "sufficiently established to have gained general acceptance in the particular field in which [they] belong[ ]." Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923). The Supreme Court held in Daubert, however, that Federal Rule of Evidence 702 displaced the Frye "general acceptance" test. Thus, under Daubert, a district court must engage in an assessment "of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, --- U.S. ----, 113 S.Ct. at 2796; see also McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1406 (8th Cir.1994).
 
 
 13
 The District Court's Daubert assessment was based on its review of the psychological evaluations of the appellants conducted by Drs. Sullivan, Scanlan and Jones, which evaluations formed the foundation for their proffered testimony. See Gier, 845 F.Supp. at 1345. The evaluation of the appellants consisted of (1) reviewing Child Behavior Checklists (CBCs) completed by the appellants' parents; (2) conducting clinical interviews with appellants that involved role playing with anatomically correct dolls; and (3) interviews with appellants' parents and assessment of their credibility. The clinical interviews purportedly were conducted in accordance with a protocol developed by Dr. Sullivan.
 
 
 14
 The District Court first expressed general reservations regarding the use of psychological evaluations as evidence in cases of alleged child abuse, whether the abuse at issue be physical, emotional, or sexual. The court cited cases from a number of jurisdictions dealing with the use of psychological evaluations and observed that such evaluations tend to be founded on "vague psychological profiles and symptoms." Id. at 1348 (quoting State v. Cressey, 137 N.H. 402, 628 A.2d 696, 700 (1993)). Moreover, the court observed that psychological evaluations based on a number of symptoms or indicators are "essentially irrefutable" because:
 
 
 15
 [a]n expert using this methodology may candidly acknowledge any inconsistencies or potential shortcomings in the individual pieces of evidence she presents, but can easily dismiss the critique by saying that her evaluation relies on no one symptom or indicator and that her conclusions still hold true in light of all the other available factors and her expertise in the field. In such a case, the expert's conclusions are as impenetrable as they are unverifiable.
 
 
 16
 Gier, 845 F.Supp. at 1348 (quoting Cressey, 628 A.2d at 701).
 
 
 17
 Proceeding to the first Daubert inquiry, the reliability of the appellants' experts' methodology, the District Court found (1) that the CBCs relied upon in part by the appellants' experts had not been validated for use with mentally retarded children; (2) that in any event a CBC is insufficient, on its own, to establish that a child has been abused; (3) that Dr. Sullivan's clinical interview protocol, which appellants' experts submitted and which they claimed was accepted by the relevant scientific community, did not provide specific guidance for conducting clinical interviews; and (4) that in interviewing the appellants, the appellants' experts departed significantly from the clinical protocol that they submitted to the court.
 
 
 18
 In keeping with the "general observations" offered by way of guidance in Daubert, the District Court also examined the error rate associated with the psychological evaluation methodology used by the appellants' experts. See Daubert, --- U.S. ----, 113 S.Ct. at 2797 (stating that "the court ordinarily should consider the known or potential rate of error"). The District Court concluded that there was no support for the assertions of the appellants' experts that the error rate for their methodology was low, and cited an article provided by the appellants' experts that stated, "Given the lack of an independent mechanism for knowing whether the child has been abused or not, and therefore, the reliance on opinion for classification, the validity of the judgment often cannot be absolutely established.... Nor has the reliability of the judgments been fully established in published reports." Gier, 845 F.Supp. at 1352 (quoting Berliner & Conte, Sexual Abuse Evaluations: Conceptual and Empirical Obstacles, 17 Child Abuse & Neglect 111, 113 (1993)).
 
 
 19
 Having assessed the proffered evidence under the first Daubert criterion, the District Court decided, under the second Daubert criterion, that the appellants' experts' methodology could not properly be applied to the facts at issue in this case. We agree with the District Court. Even if we considered the evaluation methodology employed by the appellants' experts in this case to be reliable, it would be reliable only to choose "a course of psychotherapy for these disturbed children, ... which must ... rely on perception as well as reality, and upon the subjective reports of parents or others." Gier, 845 F.Supp. at 1353. The methodology is not reliable enough to make factual or "investigative conclusions" in legal proceedings. Id.
 
 
 20
 Having carefully reviewed the record we find no error in the District Court's findings. The analysis conducted by the District Court is precisely the type of analysis the decision in Daubert would appear to contemplate. Because appellants' proffered expert testimony did not satisfy the criteria set out in Daubert, the District Court's preclusion of that testimony was not a clear abuse of discretion. The appellants have stipulated that absent the expert testimony at issue here they were unable to meet their burden of proof. It follows that the District Court's order granting summary judgment was proper.
 
 III.
 
 21
 Because we have concluded that full summary judgment was appropriate on the expert testimony issue, we need not decide appellants' remaining arguments regarding the District Court's order granting partial summary judgment. The judgment of the District Court is affirmed.
 
 
 
 [1]
 The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska, who presided over the case pursuant to the consent of the parties in accordance with 28 U.S.C. Sec. 636(c) (1988)