933 So.2d 568 (2006)
Brandon Kenneth JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D04-3227.
District Court of Appeal of Florida, First District.
April 27, 2006.
*569 Terry Clifton Christian, Tampa, Attorney for Appellant.
Charlie Crist, Attorney General, and Sharon Wells, Assistant Attorney General, Tallahassee, Attorneys for Appellee.
THOMAS, J.
Appellant, Brandon Kenneth Johnson, appeals his first-degree felony murder conviction for the death of his three-month-old infant son. Appellant raises six issues on appeal, including whether the trial court erred in admitting medical testimony attributing the infant's death to "Shaken Baby Syndrome." Because we find no merit in any issue raised, we affirm Appellant's conviction. We write only to address whether the trial court erred in admitting the medical examiner's expert opinion testimony on Shaken Baby Syndrome.
Before trial, Appellant filed a motion for a hearing pursuant to Frye v. United States, 293 F. 1013 (D.C.Cir.1923), challenging the testimony of the medical examiner who found that the infant's death resulted from abusive head trauma, or Shaken Baby Syndrome. Appellant argued that a Frye hearing was necessary because Shaken Baby Syndrome is controversial and is not generally accepted by the relevant scientific community.
A Frye hearing is appropriate to determine the admissibility of a "new or novel" scientific principle. See Zack v. State, 911 So.2d 1190, 1197-98 (Fla.2005). While Shaken Baby Syndrome has been reported in the medical literature since 1972[1] and is not new, Florida courts must conduct a Frye hearing if one has not previously been conducted. See Hadden v. State, 690 So.2d 573, 576 (Fla.1997). Shaken Baby Syndrome has not previously been subjected to a Frye analysis in Florida.
However, Florida courts have allowed Shaken Baby Syndrome testimony as expert opinion regarding the cause of a child's death. See Washington v. State, 737 So.2d 1208 (Fla. 1st DCA 1999); Caban v. State, 892 So.2d 1204 (Fla. 5th DCA *570 2005). Because Shaken Baby Syndrome testimony has been admitted in Florida and in other jurisdictions, Shaken Baby Syndrome testimony is no longer a new or novel scientific principle subject to a Frye analysis. See, e.g., In re Child of Green, Nos. C3-03-125, C1-03-205, 2003 WL 21652472 at *5 (Minn.App. Jul. 15, 2003) (explaining that the theory that an infant can sustain injuries from shaking is generally accepted by physicians who regularly examine, diagnose, or treat infants who have sustained brain injuries, therefore, Shaken Baby Syndrome is not new or novel and subject to Frye); People v. Yates, 290 A.D.2d 888, 736 N.Y.S.2d 798, 801 (2002) (stating that evidence of Shaken Baby Syndrome is not a novel scientific theory); State v. McClary, 207 Conn. 233, 541 A.2d 96, 102 (1988) (concluding that Shaken Baby Syndrome has been generally accepted as a diagnosis in the medical field); State v. Compton, 304 N.J.Super. 477, 701 A.2d 468, 473-74 (1997) (finding that Shaken Baby Syndrome is recognized in medical literature and has been accepted in numerous other jurisdictions as a reliable scientific premise and citing cases from other jurisdictions).
We find that a Frye hearing was not required in this case for two reasons. First, Shaken Baby Syndrome is accepted in the relevant scientific community and, therefore, is no longer new or novel. Second, the identification of Shaken Baby Syndrome as the cause of the infant's death was an expert opinion based on the medical examiner's personal training and experience. An expert opinion based on personal training and experience is not subject to a Frye analysis. See Herlihy v. State, 927 So.2d 146 (Fla. 1st DCA 2006) (citing Gelsthorpe v. Weinstein, M.D., 897 So.2d 504, 509 (Fla. 2d DCA 2005)). In Herlihy, we held that the appellant's trial counsel was not ineffective for failing to object to medical testimony identifying Shaken Baby Syndrome as the cause of the child's death and that counsel was not ineffective for failing to request an unnecessary Frye hearing. Similarly, the testimony here was the medical examiner's expert opinion, and the testimony would have been properly admitted without first subjecting it to a Frye hearing.
AFFIRMED.
BARFIELD, and BROWNING JJ., concur.
NOTES
[1] John Caffey, On the Theory and Practice of Shaking Infants: Its Potential Residual Effects of Permanent Brain Damage and Mental Retardation, 124 American Journal of Diseases in Children 161 (1972).