Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 17, 2019

## 2019 CO 55

**No. 15SC877,** *Kutzly v. People*—**Expert Testimony—Reliability—***Shreck* **Hearing.**

William Kutzly, prior to his trial for several crimes involving sexual assault on a child, filed a motion requesting a *Shreck* hearing to determine the reliability of one of the prosecution's proposed expert witnesses. The trial court denied the motion. Kutzly argues that the trial court erred in denying his motion because it failed to make a specific finding regarding the reliability of the proposed expert testimony.

We conclude that the trial court made specific findings of reliability such that its decision not to hold a *Shreck* hearing was not an abuse of discretion. Hence, we hold that the trial court did not abuse its discretion in concluding that the expert's testimony was reliable.

Accordingly, we affirm the court of appeals' decision.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

**2019 CO 55**

---

**Supreme Court Case No. 15SC877**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 11CA2471

---

**Petitioner:**

William Kutzly,

v.

**Respondent:**

The People of the State of Colorado.

---

**Judgment Affirmed**
*en banc*
June 17, 2019

---

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Tracy C. Renner, Deputy Public Defender
   *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
John T. Lee, Senior Assistant Attorney General
   *Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1 William Kutzly was charged with several crimes involving sexual assault on a child. During his trial, the court qualified a social worker as an expert witness in child sexual assault and victim dynamics; the witness then testified about behaviors common among sexually abused children, as well as traits common among sex offenders. Prior to trial, Kutzly moved the trial court to hold a *Shreck* hearing to determine the reliability of the social worker's proposed testimony. The trial court held a hearing on that motion, determined that the testimony was reliable, and ultimately denied the motion to hold a full evidentiary *Shreck* hearing on that issue. Kutzly argues that this was in error.[1] We conclude that the trial court made specific findings of reliability such that its decision not to hold a *Shreck* hearing was not an abuse of discretion. Hence, we hold that the trial court did not abuse its discretion in concluding that the expert's testimony was reliable under CRE 702. We therefore affirm the court of appeals' decision.

## I. Facts and Procedural History

¶2 Kutzly helped his wife run her daycare. J.S. attended that daycare between the ages of two and three. During that time, J.S. described to his mother how Kutzly had

---

[1] We granted certiorari to review the following issues:

1. Whether the court of appeals erred in applying *People v. Shreck*, 22 P.3d 68 (Colo. 2001), in evaluating the admissibility of experience-based testimony under CRE 702.

2. Whether expert testimony by a licensed social worker regarding the common characteristics of (1) child sexual assault victims and (2) adult sexual offenders was inadmissible because it was not reliable.

sexually assaulted him which, combined with J.S.'s newly sexualized behavior, prompted J.S.'s mother to contact the police. Following an investigation, Kutzly was charged with sexual assault on a child, sexual assault on a child by one in a position of trust, and a habitual sexual offender count. Kutzly's theory of defense was that J.S.'s mother fabricated the story after learning that Kutzly was a registered sex offender to explain away J.S.'s behavior.

¶3 Prior to trial, the People filed a notice endorsing Gayle Christensen, a social worker, as an expert witness in child sexual assault and victim dynamics who would testify in the areas of perpetrator dynamics, victim dynamics, and rape trauma syndrome.[2] The primary basis of Christensen's expert qualification was his 31 years of experience counseling (1) over 1,000 children who were reportedly victims of sexual abuse, and (2) over 250 suspected sex offenders. In response to the endorsement of Christensen as an expert, Kutzly filed a motion requesting an evidentiary hearing pursuant to *People v. Shreck*, 22 P.3d 68 (Colo. 2001), i.e., a *Shreck* hearing, to determine the admissibility of Christensen's proposed testimony. The trial court held a motions hearing to determine if a *Shreck* hearing was warranted. During that motions hearing, Kutzly argued that Christensen should not be permitted to testify about common characteristics of child sex abuse victims or sex offenders. According to Kutzly, such testimony was

---

[2] The People clarified that Christensen's testimony would not address whether an actual syndrome exists, but rather the individual attributes that make up the syndrome, such as delayed reporting, recantation, and grooming.

3

unreliable because (1) it could not be confirmed that Christensen's previous clients were actually victims or perpetrators of abuse, and (2) his opinions were not supported by studies. The People responded that a *Shreck* hearing was unnecessary because experience-based expert testimony does not need to be supported by a scientific foundation to be reliable and Kutzly's arguments did not relate to admissibility but rather to the strength of the evidence. Ultimately, the trial court adopted the People's arguments and denied Kutzly's motion to hold a *Shreck* hearing.

¶4 At trial, the court accepted Christensen as an expert in the dynamics of sexual abuse and sexual offenders. In so doing, the trial court noted that Christensen held a master's degree in social work and an undergraduate degree in psychology, and that he had participated in continuing education throughout his career. It also noted that Christensen is a licensed clinical social worker and was approved as a full-treatment provider by the Sex Offender Management Board, and that he had 31 years of experience working with over 1,000 child victims of sexual abuse and over 250 sex offenders.

¶5 On direct examination, Christensen testified about common behaviors in sexual abuse relationships, including that sex offenders: (1) often gain access to children through supervisory roles; (2) sometimes target more vulnerable children, such as those with a high level of emotional need, or those who lack adult attention or supervision; (3) exploit children by identifying their emotional needs; and (4) gradually gain a child's compliance through grooming, i.e., by beginning with ordinary touching and progressing to inappropriate touching. Christensen also testified that it is common for child victims to: (1) delay reporting; (2) only tell part of the story when they initially report, then gradually

4

disclose more information; (3) act out sexually themselves; and (4) react differently than adults to abuse.

¶6 On cross-examination, the defense questioned Christensen about how he can tell whether the people he treats are actual victims or perpetrators of sexual abuse. Christensen answered that sometimes abuse is clearly confirmed because of an admission or additional evidence but other times it is difficult to assess and he can never be one hundred percent certain that abuse actually occurred in each circumstance. The defense also asked if Christensen's opinions about common behaviors in sexual abuse relationships were scientifically validated through comparisons with control groups, to which Christensen responded no.

¶7 Kutzly was found guilty as charged. He appealed his convictions, arguing, as relevant here, that Christensen's testimony was unreliable under *Shreck* and was thus improperly admitted at trial. The court of appeals held that the trial court did not commit reversible error in permitting Christensen to testify about common characteristics of child sex abuse victims and sex offenders because this type of testimony is well recognized as admissible in Colorado. *People v. Kutzly*, No. 11CA2471, slip op. at 14 (Colo. App. Sept. 3, 2015). We granted certiorari to determine whether the court of appeals properly applied *Shreck* and whether Christensen's testimony was reliable under CRE 702. We now affirm.

## II. Standard of Review

¶8 We review a lower court's application of a legal standard de novo. *LaFond v. Sweeney*, 2015 CO 3, ¶ 12, 343 P.3d 939, 943. We review a trial court's determination of

5

the admissibility of expert testimony for an abuse of discretion. *People v. Rector*, 248 P.3d 1196, 1200 (Colo. 2011).

## III. Analysis

¶9 We begin by examining the *Shreck* standard for determining the admissibility of expert testimony. Next, we decide whether the lower courts properly applied *Shreck* and, more specifically, whether the trial court abused its discretion when it concluded that Christensen's testimony was reliable under CRE 702. We conclude that the trial court made specific findings of relevance, reliability, and that CRE 403 was satisfied such that its decision not to hold a *Shreck* hearing was not an abuse of discretion. Hence, we hold that the trial court did not abuse its discretion in concluding that Christensen's testimony was reliable under CRE 702.

## A. Law

¶10 In *Shreck*, we explained that the admissibility of expert testimony is governed by CRE 702 and CRE 403. 22 P.3d at 68. We further clarified that, under these evidentiary rules, admissibility of expert testimony requires that the testimony be relevant and reliable, and that the probative value of the evidence not be substantially outweighed by any of the countervailing considerations contained in CRE 403. *Id.* at 70, 77–78. No one disputes that *Shreck* applies in this case. And our decision in *Ruibal v. People* confirmed as much. 2018 CO 93, ¶ 12, __ P.3d __ (explaining how *Shreck* made clear that CRE 702, rather than the antiquated "general acceptance" standard of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), governs the admissibility of all expert testimony in Colorado, including experience-based expert testimony).

¶11 A party may move the trial court to conduct a pretrial evidentiary hearing, i.e., a *Shreck* hearing, to decide the admissibility of an expert witness's proposed testimony. *Rector*, 248 P.3d at 1201. A trial court, however, may decide that a *Shreck* hearing is unnecessary. *Id.* A trial court need not conduct a *Shreck* hearing if there is sufficient information to make an admissibility determination without one, but the trial court must nonetheless address the testimony and make specific findings regarding its challenged admissibility. *Id.*; *Ruibal*, ¶ 13. Notably, a trial court fails to make a specific finding if such a finding must be inferred. *Ruibal*, ¶ 14. If the trial court fails to make a specific finding, then it abuses its discretion in not holding a *Shreck* hearing unless the record not only supports admission of the contested testimony, but virtually requires it, or if Colorado has already properly accepted the basis of the expert's testimony. *Id.*

¶12 Regarding a specific finding of reliability of expert testimony, a trial court should apply a liberal standard that only requires proof that the underlying scientific principles are *reasonably* reliable. *Shreck*, 22 P.3d at 77. Determining if expert testimony is reasonably reliable requires considering the totality of the circumstances surrounding the proposed expert testimony and is not contingent on any specific list of factors. *Id.* at 77–78. Therefore, certain factors — such as whether the technique has been tested, whether it has been subjected to peer review and publication, whether it has been generally accepted, its known or potential rate of error, and the existence and maintenance of standards controlling its operation — will be crucial in some cases but inapposite in others. *See id.* (explaining that the factors significant to making a CRE 702 reliability determination will vary depending on the particular subject matter at hand). Moreover,

7

a trial court's reliability determination should consider whether the witness is qualified as an expert regarding the proposed testimony. *Id.* at 77.

## B. Application

¶13    The first issue we must address is whether the trial court correctly applied *Shreck* when it denied Kutzly's motion to hold a *Shreck* hearing. We conclude that it did because it made specific findings of relevance, reliability, and that CRE 403 was satisfied.[3] Second, we must consider whether the trial court abused its discretion in concluding that Christensen's testimony was reliable under CRE 702. We conclude that it did not.

### 1. The Trial Court Made Specific Relevance, Reliability, and CRE 403 Findings

¶14    Kutzly argues that the trial court failed to make specific findings of relevance, reliability, and that CRE 403 was satisfied. But the record in fact proves otherwise. Prior to trial, the People filed a notice endorsing Christensen as an expert witness. In response, Kutzly filed a motion requesting an evidentiary hearing under *Shreck* to determine the admissibility of Christensen's testimony. The trial court held a hearing on that motion, heard arguments from both sides, and concluded that an evidentiary hearing under *Shreck* was unwarranted. The issue is therefore whether the trial court's conclusion that

---

[3] The court of appeals opinion did not address whether the trial court made specific findings, and instead held that the trial court did not err in denying a *Shreck* hearing because expert testimony about the behavior of sexual assault victims and expert testimony on sex offender characteristics has been regularly admitted in Colorado. *Kutzly*, slip op. at 12–15. Since we conclude that the trial court made specific findings, we need not address whether such testimony had been properly admitted in previous cases.

8

an evidentiary hearing under *Shreck* was unwarranted included specific findings of relevance, reliability, and that CRE 403 was satisfied. We conclude that it did.

¶15 At the hearing on Kutzly's motion for a *Shreck* hearing, the court expressly found that Christensen's proposed testimony was relevant. Additionally, although the court did not explicitly cite CRE 403, it applied that rule's test when it acknowledged that the proposed testimony was prejudicial but that any risk of unfair prejudice could be combatted during cross-examination. Therefore, there was a specific finding that CRE 403 was satisfied.

¶16 We also conclude that the trial court made a specific finding that Christensen's proposed testimony was reliable. We reach this conclusion because of two statements made by the trial court. First, the trial court disagreed with Kutzly's argument that Christensen's testimony was inadmissible because it was based on an inadequate scientific foundation.[4] Second, the trial court incorporated the People's argument for admissibility into its finding, which emphasized Christensen's experience working with both victims and perpetrators of sexual assault.[5] Taken together, we conclude that, while

---

[4] The trial court noted that Kutzly "is arguing that the scientific foundation is inadequate, but that is a point for cross-examination. The Court is satisfied that . . . Mr. Christensen is allowed to testify in this area." The court further stated that Kutzly's arguments "are excellent [for] cross-examination, but . . . [don't] get past the foundation as to whether Mr. Christensen can be qualified as an expert."

[5] In the People's response to Kutzly's motion to hold a *Shreck* hearing, it argued that testimony of this type is reliable assuming the witness can be qualified as an expert. This argument was incorporated by the trial court, which stated that it found the arguments cited by the People "persuasive" and incorporated them into its finding. Therefore, the

9

not ideal, the trial court's specific finding regarding the reliability of Christensen's testimony was sufficient.

## 2. The Trial Court Did Not Abuse Its Discretion

¶17    We now review whether the trial court abused its discretion when it concluded that Christensen's testimony was reliable under CRE 702.  Kutzly argues that Christensen's testimony about the behavior of sexually abused children and offenders was unreliable because (1) it was not based on confirmed cases of abuse, and (2) the prosecution offered no evidence that Christensen's opinions were supported by studies. The core theme in Kutzly's argument is that experience-based expert testimony must be based on some level of statistical analysis.  In this instance, however, statistical analysis is not required because Christensen's testimony is reasonably reliable under the totality of the circumstances.[6] *See Shreck*, 22 P.3d at 77–78.

¶18    Here, Christensen based his opinions on his educational background in conjunction with his experience counseling over 1,000 purported child victims of sexual abuse and over 250 purported sex offenders.  Kutzly contends that if it had been confirmed that each suspected victim had been abused and that each suspected offender had committed abuse, Christensen's testimony would have been reliable.  But the trial

trial court made a specific finding that Christensen was qualified to opine on the matter, which is a factor that trial courts should consider when making a reliability determination. *Shreck*, 22 P.3d at 77.

[6] We do not opine that statistical analyses are never appropriate for experience-based testimony.  We only determine that the trial court did not abuse its discretion here.

court did not need this certainty to find Christensen's testimony reliable. Again, the question is whether the testimony is *reasonably* reliable, so it only matters that it was reasonably likely that the suspected victims had been abused and that the suspected offenders had committed abuse. The suspected victims and offenders who formed the bases of Christensen's opinions were not randomly selected people but were individuals who were referred to Christensen from entities such as the Sex Offender Management Board. Under these circumstances, it was not an abuse of discretion to conclude that it was reasonably likely that Christensen's patients were actual victims and offenders. Additionally, as the trial court pointed out, the inability to absolutely confirm the reported abuse or victimization is a ground for cross-examination rather than a bar to Christensen's qualification as an expert. The possibility of false reporting was pointed out to the jury, and the jury gave that evidence the weight it determined it was due. We therefore conclude that the district court did not abuse its discretion when it found that Christensen's testimony was reliable under CRE 702.

## IV. Conclusion

¶19 We conclude that the trial court made specific findings of relevance, reliability, and that CRE 403 was satisfied. Moreover, we hold that the trial court did not abuse its discretion in concluding that Christensen's testimony was reliable under CRE 702, and thus admitting it at trial. For the foregoing reasons, we affirm the judgment of the court of appeals.